FILED
2022 Nov-16  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANDON ALLEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-CV-1846-RDP** |
| | } | |
| **PJ CHEESE, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Defendant PJ Cheese's Motion for Summary Judgment (Doc. # 39). The Motion has been fully briefed (Doc. # 39, 42) and is ripe for review. After careful review, and for the reasons discussed below, the court concludes that the Motion (Doc. # 39) is due to be denied.

## I.    Factual Background[1]

Plaintiff Brandon Allen ("Plaintiff") brought this action alleging racial discrimination against his former employer, Defendant PJ United ("Defendant"). (Doc. # 38 ¶ 12). Plaintiff was employed as a delivery driver at Defendant's Irondale, Alabama store for about four months -- from November 2018 to March 2019. (*Id.* ¶ 13). He applied for this job using an online job board, which redirected him to MyStaffingPro, a software program Defendant used for its application process. (Doc. # 39 at 7). Generally, when Defendant hires an applicant, it sends an email with a link to employment documents "which must be completed as part of a new-hire onboarding

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

process." (*Id*. at 8) (citing Doc. # 36-6 at 11).

Among the employment documents provided to new hires is Defendant's arbitration agreement. (Doc. # 39 at 9). Former Human Resources Director Becky Allbrook testified that the arbitration agreement "appears on the screen as part of the onboarding process, and [an] employee cannot proceed with the onboarding process without electronically signing the arbitration agreement." (*Id*.). A newly hired employee who did not complete this onboarding process in its entirety would be terminated. (*Id*.). Once an employee signs the electronic documents, the date and time of the electronic signature are stamped on the document. (*Id*. at 9). Paychex, a popular provider of outside Human Resources management, maintains these documents in its computer system. (*Id.*). Defendant has access to that system. (*Id.*).

Defendant has produced copies of arbitration agreements that have been electronically signed and dated by Plaintiff. (Doc. # 36-3 at 8-9, 17-18). These agreements were produced along with signed and dated copies of a number of other employment documents that were sent to Plaintiff as part of the onboarding process. (Doc. # 36-3). Plaintiff purportedly accessed these documents and electronically signed them using his cell phone and email address, and he denies providing access to those to anyone else. (Doc. # 39 at 12-13).

Plaintiff, however, states in a sworn affidavit that, while he did fill out paperwork relating to taxes and wages, he never signed an arbitration agreement. (Doc. # 12-2). Indeed, Plaintiff "unequivocally dispute[s] … that [he] signed, agreed to, was aware of, received, and/or reviewed any document entitled 'Agreement and Receipt for Dispute Resolution Program,' 'Dispute Resolution Program Booklet,' or any document purporting to bind [him] to arbitration…." (*Id*.). Moreover, while Defendant has produced the signed copy of the arbitration agreement, it concedes that no representative witnessed Plaintiff sign it. (Doc. # 35-2 at 9). While the documents do feature

an electronic signature bearing Plaintiff's name, Defendant's representative admits that she cannot "definitively say who was the individual who applied this electronic signature to this document." (Doc. # 38 at 10-11).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and, by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden

depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial. (*Id.* at 1115-16).

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. (*Id.*). Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. (*Id.*). The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. (*Id.* at 1115). This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. (*See id.* at 1115-16).

## III.    Analysis

The parties have filed cross summary judgment motions on the issue of arbitrability. (Docs. # 37, 39). In its Motion, Defendant argues that Plaintiff has presented insufficient evidence to rebut

its production of the electronically signed arbitration agreements. (Doc. # 39). Consequently, Defendant claims there is no genuine dispute of material fact as to whether Plaintiff signed the arbitration agreements and that the question of arbitrability should be decided by an arbitrator rather than this court. (*Id*.). The court disagrees and concludes that Defendant's Motion is due to be denied and Plaintiff is entitled to a jury trial to determine whether he signed the arbitration agreement.

The Supreme Court has made clear that the question of whether an arbitration agreement exists is a matter of state contract law. *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("'[C]ourts generally … should apply ordinary state-law principles that govern the formation of contracts' in determining whether the parties have agreed to arbitrate.")); *see also Burch v. P.J. Cheese, Inc*., 861 F.3d 1338, 1346 (11th Cir. 2017). To prove the existence of a contract under Alabama law, the party seeking to enforce the contract must prove there was "an offer[,] an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *P.J. Cheese*, 861 F.3d at 1346 (quoting *Shaffer v. Regions Fin. Corp*., 29 So.3d 872, 880 (Ala. 2009)).

While a challenge to a contract that *contains* an arbitration agreement is for an arbitrator to resolve, "a challenge to the very existence of the [arbitration agreement] ... is an issue for a court, not an arbitrator, to decide." *Equity Tr. Co. v. Morris*, CV-20-900301 2022 WL 3572609 (Ala. Aug. 19, 2022) (quoting *Mason v. Acceptance Loan Co., Inc.*, 850 So. 2d 289, 295 (Ala. 2002)). "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue ... the party alleged to be in default may ... demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury." *P.J. Cheese*, 861 F.3d at 1347 (quoting 9 U.S.C. § 4). Of course, a party may only demand a jury trial if it has not

5

waived its Seventh Amendment right. In order to preserve the right to a jury trial, a party must "serv[e] the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading … is served." Fed. R. Civ. P. 38(b)(1).

In 2000, the Alabama Supreme Court decided *Ex parte Meadows*, a case that is particularly instructive here. 782 So.2d 277 (Ala. 2000). In *Meadows*, the purchaser of a mobile home sued the manufacturer, dealer, and lender, alleging breach of warranty, breach of contract, and fraud. (*Id*. at 278). The defendants filed a motion to dismiss and to compel arbitration. (*Id*.). In it, they relied on the signed sales contract, which contained an arbitration agreement. (*Id*. at 279). The defendants also submitted an affidavit signed by a person claiming to have witnessed the plaintiff sign the sales contract. (*Id*.). In response, the plaintiff filed a sworn statement denying that he had signed the sales contract or arbitration agreement, as well as a sworn statement and report by an expert that the handwriting on the sales contract was a forgery. (*Id*.).

The plaintiff in *Meadows* argued that "he was entitled to a jury trial on the issue of the validity of [the] document containing the arbitration provision." (*Id*.). The court agreed, holding that the plaintiff was "entitled to have a jury determine whether he signed the … document that contained the arbitration provision." (*Id*. at 280). The court reasoned that the plaintiff "provided substantial evidence to support his contention that he did not sign the document." (*Id*.). The substantial evidence consisted of the "testi[mony] under oath that he did not sign the document" and the "testimony from an expert … who corroborated Meadows's testimony that he did not sign the document." (*Id*.).

Here, the key question is whether Plaintiff has introduced sufficient evidence to create a genuine dispute as to whether he electronically signed an arbitration agreement. Plaintiff has undoubtedly done so. Defendant points to record evidence of two executed arbitration agreements

and asserts that Plaintiff's "naked denial that he signed either arbitration agreement is not, as a matter of law, enough to 'place the making of the arbitration agreement at issue' in the absence of evidence to make the denial 'colorable.'" (Doc. # 39 at 13-14) (citing *Chastain v. Robinson-Humphrey Co.,* 957 F.2d 851 (11th Cir. 1992). Defendant relies heavily on *Chastain* to support its contention that Plaintiff has failed to adequately deny signing the arbitration agreement. *Chastain*, however, was explicitly overruled by the Eleventh Circuit. *Larsen*, 871 F.3d at 1303 n.1.

In *Larsen*, the court explained that it no longer relies on the *Chastain* test, which required that the party denying the existence of an arbitration agreement to substantiate that denial "with enough evidence to make the denial colorable." (*Id.*) (quoting *Chastain*, 957 F.2d at 855). Instead, this circuit now defers solely to applicable state-law principles "in determining the quality and quantum of evidence required to deny or prove the existence of an agreement." (*Id.*). Alabama law is clear on this question. When a plaintiff offers sworn testimony denying signing a document that purports to bear his signature, "[h]e cannot be compelled to arbitrate the issue whether he entered into a contract." *Ex parte Meadows*, 782 So. 2d at 280.

As in *Meadows*, Plaintiff "testified under oath that he did not sign the document." (*Id.*). Defendants, meanwhile, have offered into evidence a document that purports to bear Plaintiff's signature. (Doc. # 36-3). These facts are irreconcilable. Under Alabama law, "[t]he effect of an … electronic signature attributed to a person … is determined from the context and surrounding circumstances at the time of its creation." (Doc. # 39 at 4) (quoting Ala. Code § 8-1A-9(b)). However, weighing context and surrounding circumstances is a job for the jury, not the court. Accordingly, the court will set this case for a jury trial in a separate order.

**IV.   Conclusion**

For the reasons above, the Defendant's Motion for Summary Judgment (Doc. # 39) is due

to be denied. An order setting a pre-trial conference will be filed concurrently with this memorandum opinion.

DONE and ORDERED this November 16, 2022.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE