## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRANDON ALLEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-CV-1846-RDP** |
| | } | |
| **PJ CHEESE, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Brandon Allen's Motion for Partial Summary Judgment (Doc. # 78), PJ Cheese, Inc.'s Motion for Summary Judgment (Doc. # 80), and Brandon Allen's Motions to Strike (Docs. # 86, 93). The Motions have been fully briefed. (Docs. # 83, 85, 91; 82, 87, 92; 86, 93, 94, 95). For the reasons discussed below, the Motions (Docs. # 78; 80; 86; 93) are due to be granted in part and denied in part.

## I.    Factual Background

Brandon Allen ("Plaintiff"), an African American male, began working as a delivery driver for PJ Cheese Inc.'s (hereinafter "PJ Cheese" or "Defendant") Irondale, Alabama location in October 2018. (Doc. # 7 at ¶ 18). As a delivery driver, Plaintiff worked both inside the store (that work was denominated on his paystubs as "Driver Instore") and on the road (that work was denominated as "On the Road"). (Docs. # 7 at ¶¶ 72-75; 81-4).

While clocked in as Driver Instore, Plaintiff received $7.25 an hour. (Doc. # 81-4 at 1). While clocked in as On the Road, Plaintiff was guaranteed to receive $9.12 an hour, at least $4.00 of which was paid by PJ Cheese as a cash wage. (*Id.*). PJ Cheese took a tip credit for the

balance of the guaranteed rate and made up the difference if Plaintiff did not receive $5.12 in tips.[1] (*Id.*; Doc. # 7 at ¶ 77).

As a delivery driver, Plaintiff was required to maintain and pay for his own operable, safe, and legally compliant automobile to use while delivering food. (Doc. # 7 at ¶ 78). As a result, Plaintiff paid some job-related vehicle expenses, including depreciation, gas, maintenance, repair, and insurance. (*Id.* at ¶¶ 79-80). Defendant did not monitor Plaintiff's individual vehicle expenses. (*Id.* at ¶ 85). However, to offset some of the costs for his use of his personal vehicle for deliveries, Defendant provided Plaintiff with a $.27 per estimated mile driven cash reimbursement in addition to his wages and tips. (Doc. # 81-1 at 18-20).

During Plaintiff's time as an employee for PJ Cheese, Scott Herrin (now known as Emily Herrin) was the General Manager of his store. (*Id.* at 13). In addition, there were several Assistant Managers at the store, including Joseph Fleming and Aaron Clark. (Docs. # 79-1 at 6; 81-1 at 13). All were white. (Docs. # 81-1 at 13, 18; 87 at 12).

In November 2018, Plaintiff approached Joseph Fleming and accused him of taking a portion of his cash tips. (Doc. # 81-1 at 14). As the conversation progressed, Plaintiff attempted to leave the store to go home. (*Id.*). Fleming objected, telling Plaintiff "he wasn't going anywhere," before further stating "[y]ou beneath me" and that he was "going to do what [Fleming] [said]." (*Id.*). Fleming also called Plaintiff "boy" and "[m]onkey." (*Id.*).

At this time, Aaron Clark escorted Fleming outside of the store as other employees walked Plaintiff to the back of the store to calm down. (*Id.*). One of Plaintiff's coworkers came

---

[1] The Department of Labor permits an employer to take a tip credit towards its minimum wage obligation for tipped employees. "An employer must pay a tipped worker at least $2.13 per hour under the FLSA. An employer can take an FLSA tip credit equal to the difference between the direct wage, or the cash wage it pays directly to the tipped employee, and the federal minimum wage, which is currently $7.25 per hour. The maximum tip credit that an employer can currently claim is $5.12 per hour." *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA)*, U.S. Dep't of Labor, Wage and Hour Division, https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa (last visited Apr. 9, 2024).

to the back of the store and warned Plaintiff against trying to leave because Fleming was waiting outside with a gun and stating that he was going to "handle" Plaintiff if he walked outside. (*Id.*).

Eventually, the situation de-escalated, and Plaintiff complained to Aaron Clark about the encounter with Fleming. (*Id.* at 13). Plaintiff then made one more delivery run before heading home for the evening. (*Id.* at 15). After this altercation, Plaintiff alleges that Fleming bragged that he would get Plaintiff fired. (*Id.* at 25).

At some point after this event, Fleming was transferred to work at another one of Defendant's store locations.[2] Fleming returned to Plaintiff's store one day and parked near his car in the parking lot. (*Id.* at 16). As Plaintiff was walking to his car to make a delivery, Fleming approached him and started mumbling under his breath before audibly calling him a "[m]onkey" and a "nigger." (*Id.*). Plaintiff reported this behavior to Herrin; Herrin indicated it would be handled. (*Id.*).

Throughout his employment, Plaintiff also complained to Herrin that he felt as though certain white employees were treated better than black employees because they received higher reimbursement rates on delivery runs. (*Id.* at 18). Herrin informed him that this was due to seniority. (*Id.*).

On March 14, 2019, Plaintiff had a meeting with Herrin to discuss that he had not received the sign-on bonus he was promised at the start of his employment. (*Id.* at 24). During this conversation, Plaintiff brought up the incident in which Fleming threatened him with a gun. (*Id.*). At this point, Plaintiff alleges that Herrin fired him and stated it was because he earned a

---

[2] There is some dispute about when Joseph Fleming was transferred from the store location where Plaintiff worked (Store 591) to a different one of Defendant's stores. Defendant alleges that Fleming last worked in Store 591 on December 14, 2018. (Docs. # 82 at ¶ 27; 81-7). And, Plaintiff himself stated that Fleming was transferred before Christmas 2018. (Doc. # 81-1 at 16). But, Plaintiff also argues that Defendant admitted that Fleming worked at Store 591 through March 2019. (Doc. # 87 at 6 (citing Doc. # 79-1 at 22)).

low score on his Drivosity driving test.[3] (*Id.*). Defendant's record regarding Plaintiff's termination states that he voluntarily resigned. (Docs. # 79-1 at 22; 79-5 at 48).

Plaintiff filed an EEOC Charge of Discrimination on May 6, 2019, alleging that he was discriminated against on the basis of race in violation of Title VII. He also alleged that he was retaliated against for reporting and complaining about racially hostile comments and threats made by Fleming. (Doc. # 81-2).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of a material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a

---

[3] Drivosity is a program that PJ Cheese implemented for all of its delivery drivers. In essence, the program interacts with a delivery driver's car topper and scores his or her driving on deliveries (i.e., speed, braking, safety) to ensure that the driver is operating the vehicle in a safe manner. (Doc. # 82 at 6 n.2).

reasonable [trier of fact] could [find] for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (internal quotation marks omitted). "Upon making this showing, the burden shifts to the non-moving party, who must produce 'significant, probative evidence demonstrating the existence of a triable issue of fact' to avoid summary judgment." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438). That is, the moving party must demonstrate that, on all the essential elements on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party. *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, "come[s] forward with significant, probative evidence demonstrating the existence of a triable issues of fact." *Four Parcels of Real Prop.*, 941 F.2d at 1438 (alteration in original) (quoting *Chanel, Inc.*, 931 F.2d at 1477); *see also* Fed. R. Civ. P. 56(e).

Although there are cross motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir.

1955)[4]; *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *Matter of Lanting*, 198 B.R. at 820. "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." Wright, Miller & Kane, Federal Practice and Procedure § 2720, at 327-28 (3d ed. 1998). Also, these are the facts for summary judgment purposes only; they may not be the actual facts. *See Cox v. Admin. U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'What we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.'") (citations omitted).

## III.    Discussion

Plaintiff's First Amended Complaint (Doc. # 7) alleges five causes of action against Defendant: (1) Discrimination in Violation of 42 U.S.C. § 1981; (2) Discrimination in Violation of Title VII, 42 U.S.C. § 2000e; (3) Retaliation in Violation of 42 U.S.C. § 1981; (4) Retaliation in Violation of Title VII, 42 U.S.C. § 2000e; and (5) Violation of the Fair Labor Standards Act. (*Id.*).

Both parties have filed motions for summary judgment in this case. The court addresses their motions below.

### A.    Plaintiff's Motion for Partial Summary Judgment (Doc. # 78)

Plaintiff requests the court to enter partial summary judgment in his favor on three discrete issues: (1) whether Defendant must reimburse Plaintiff for a portion of the fixed vehicle costs associated with his work as a delivery driver to the extent they brought his wages below the minimum wage threshold; (2) whether Plaintiff may prove his vehicle costs associated with his

---

[4] The Eleventh Circuit recognizes that Fifth Circuit decisions rendered prior to the close of business on September 30, 1981 are binding precedent. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

work through "reasonable approximation" and estimates; and (3) whether tips received by Plaintiff in excess of the Defendant's tip credit can be credited to bring his pay above the minimum wage threshold. The court addresses each of these arguments, in turn.

> **1.      Whether Defendant has an obligation to reimburse Plaintiff for a portion of the fixed vehicle costs associated with his work to the extent they brought his wages below the minimum wage threshold**

First, Plaintiff seeks summary judgment in his favor on the question of whether Defendant had an obligation to reimburse Plaintiff for the fixed costs associated with his vehicle to the extent Plaintiff's payment of those costs reduced his wages below the statutory minimum.

As noted above, Defendant paid Plaintiff a reimbursement rate of $0.27 per mile for deliveries. Plaintiff makes clear that the question of whether this reimbursement rate was sufficient is not before the court. (Doc. # 83 at 5-6). Nor is the issue of whether Plaintiff's costs actually *did* reduce his wage below the statutory minimum. (*Id.* at 6). Instead, the only question Plaintiff has presented is, *if* Plaintiff's payment for fixed costs associated with his vehicle *did* reduce his wages below the statutory minimum, was Defendant obligated to reimburse him for those expenses. (*Id.*).

The phrasing of the question posed by Plaintiff makes it obvious that a material question of fact remains on this issue: whether or not Plaintiff's vehicle costs actually reduced his wages below the statutory minimum. But this court resolves cases and controversies. It does not answer hypothetical questions. *See Gagliardi v. TJCV Land Trust*, 889 F.3d 728, 733 (11th Cir. 2018) (citations omitted) ("[Federal courts] are not in the business of issuing advisory opinions that do not 'affect the rights of litigants in the case before' us or that merely opine on 'what the law would be upon a hypothetical state of facts.'"); *Miller v. F.C.C.*, 66 F.3d 1140, 1142 (11th Cir. 1995) ("[T]he issue presented … constitutes a hypothetical question rather than an actual case or

controversy. Based on the constitutional prohibition against advisory opinions, we cannot decide this hypothetical question."). Therefore, until Plaintiff can show that the fixed costs associated with his vehicle actually reduced his wages below the statutory minimum, any analysis of whether Defendant had a duty to reimburse Plaintiff for those costs is simply premature.

Accordingly, Plaintiff's request for summary judgment on this issue is due to be denied.

### 2.      Reasonable Approximation of Vehicle Costs

Plaintiff also has moved for summary judgment on the issue of whether he may prove his claims through estimates of his vehicle costs, rather than showing what his actual costs were.

Before evaluating this issue, it is necessary to examine the fairly long chain of connected regulations that govern this area of the law. Under the FLSA, employers are required to pay employees at least $7.25 per hour. 29 U.S.C. § 206(a). Plaintiff's claims here are based on a regulation under the FLSA referred to as the "anti-kickback rule." 29 C.F.R. § 531.35. That regulation states:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [FLSA] will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee … For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to him under the Act.

*Id.* Section 531.35 ends by saying, "[s]ee also in this connection, § 531.32(c)." Section 531.32(c) generally provides that when an employee pays for "facilities" that primarily benefit the employer, those payments are "not included in computing [an employee's] wages." 29 C.F.R. § 531.32(c). "Taking these two provisions together, then, an employer must reimburse an

employee for any costs [he] bears for the employer's benefit (at least to the extent necessary to avoid underpayment of the employee's minimum wage); and expenditures primarily for the employer's benefit do not count toward payment of the employee's wages." *Parker v. Battle Creek Pizza, Inc.*, 95 F.4th 1009, 1014 (6th Cir. Mar. 12, 2024).

Section 531.32(c) in turn directs readers to another regulation for a "discussion of reimbursement of expenses": 29 C.F.R. § 778.217. Section 778.217 states the following general rule:

> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employer's regular rate (if the amount of the reimbursement *reasonably approximates* the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217 (emphasis added). Section 778.217(b) then lists several non-exhaustive illustrations of employee expenses not to be regarded as part of an employee's rate, including this:

> (3) The *actual or reasonable approximate* amount expended by an employee, who is traveling "over the road" on his employer's business, for transportation (whether by private or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business.

29 C.F.R. § 778.217(b)(3).

Pointing to § 778.217(b)(3), Plaintiff argues that this regulation allows an employer to reasonably approximate the amount of the employee's vehicle expenses for reimbursement purposes. And, Plaintiff contends, the flipside should be true: an employee also should be able to reasonably approximate his vehicle expenses in proving an FLSA claim. The sufficiency of Plaintiff's argument hinges on two questions: (1) whether § 778.217 allows an <u>employer</u> to

reasonably approximate an employee's vehicle costs; and (2) if so, whether an <u>employee</u> can also reasonably approximate his vehicle costs. The court analyzes each question in turn.

> ### a.     Whether an employer may reasonably approximate an employee's vehicle costs

First, the court must determine whether the regulation chain connecting 29 C.F.R. § 531.35 to 29 C.F.R. § 778.217 allows an employer to reasonably approximate an employee's vehicle costs.

Almost all district courts analyzing this question have determined that the connections between 29 C.F.R. §§ 531.35, 531.32(c), and 778.217 allow an employer to reasonably approximate an employee's vehicle costs for reimbursement purposes. *See, e.g., Sullivan v. PJ United, Inc.*, 2017 WL 10575860, at *5-7 (N.D. Ala. 2017) ("*Sullivan I*"); *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) (concluding that, after reviewing the applicable regulations (*i.e.*, Sections 531.35, 531.32(c), and 778.217), the same "also permit an employer to approximate reasonably the amount of an employee's vehicle expenses without affecting the amount of the employee's wages for purposes of the federal minimum wage law");  *Blose v. Jarinc, Ltd.*, 2020 WL 5513383, at *2 (D. Colo. 2020) (holding that "as a matter of law, an employer may reasonably approximate vehicle expenses when reimbursing its employees"); *Kennedy v. Mountainside Pizza, Inc.*, 2020 WL 5076756, at *6 (D. Colo. 2020) (holding that "defendants are permitted to 'reasonably approximate' [p]laintiff's vehicle-related expenses for reimbursement purposes under the FLSA and applicable regulations").

A recent opinion by the Sixth Circuit may have brought the correctness of these rulings into question. In *Parker v. Battle Creek Pizza, Inc.*, the Sixth Circuit held that <u>neither</u> an employee <u>nor</u> an employer may rely on Section 778.217 to reasonably approximate expenses for

reimbursements. 95 F.4th 1009 (6th Cir. Mar. 12, 2024). The Sixth Circuit pinned its analysis on

two primary reasons.

First, it noted that Section 778.217 falls into a different "subchapter" of the FLSA than

Sections 531.35 and 531.32. "[Section] 778.217 deals exclusively with overtime compensation

under § 207 of the Act, whereas the § 531 provisions deal primarily with wage payments under §

206." *Id.* at 1014. In the Sixth Circuit's view, the two subsections cannot intertwine:

> § 778.217 addresses only computations for the purpose of calculating overtime
> pay. And for that purpose, a reimbursement that falls short of the employee's
> actual costs would not reduce her overtime pay. For in that event, the amount
> deducted from her regular rate would be the same amount as the reimbursement
> (which by definition would not be excessive). That would leave her regular rate
> unchanged from her hourly wage. So as far as overtime is concerned, therefore,
> the underpayment would result in no violation of the Act. …
>
> By contrast – when determining whether a minimum-wage employee has been
> paid her minimum wages – a "reasonable approximation" that amounts to an
> underpayment of an employee's cost of providing tools most certainly *would*
> result in a violation of the Act. Indeed, it would violate the very provision at issue
> here: namely, § 206(a)(1)(C). For when (as here) an employee's hourly wage is
> the bare minimum wage, *any* underpayment of her cost of providing tools will cut
> into her minimum wages. … Application of the "reasonable-approximation" rule
> to minimum-wage calculations, therefore, opens the door to FLSA violations in a
> way that application of that rule to overtime calculations does not.

*Id.* at 1015 (emphasis in original).

Second, the Sixth Circuit found alternatively that, even if the two *did* intertwine, Section

778.217 does not even apply the "reasonable approximation" rule to costs of operating a delivery

vehicle. *Id.* at 1014-15. Specifically, the court noted that Section 778.217(b)(1) says that "[t]he

actual amount expended by an employee in purchasing supplies, *tools,* materials, cell phone

plans, or equipment on behalf of his employer" will not be regarded as part of the employee's

regular rate. *Id.* at 1015 (emphasis in original). The Sixth Circuit held that, because a delivery

vehicle is a tool of the trade, it is thus a "tool" under Section 778.217(b)(1) such that an

employer must reimburse for the actual amount of expenses – not based on a reasonable approximation. *Id.*

Adding to this asymmetry, both of these "reasons" run contrary to a 2020 Opinion Letter from the Department of Labor ("DOL") discussing reimbursement for pizza delivery drivers. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2020 WL 5367069 (2020). First, the DOL applies § 778.217 to FLSA minimum wage claims regardless of the section's main focus being overtime provisions:

> By itself, 29 C.F.R. § 778.217 concerns expense reimbursements that can be excluded from the "regular rate" of pay when determining an employee's overtime rate … however, it also sets forth the payments that are sufficient to meet the FLSA's minimum-wage requirements because it is incorporated by reference into those requirements. 29 C.F.R. § 531.35, *incorporating id.* § 531.32(c), *incorporating in turn id.* § 778.217.

*Id.* at 2 n.2 (italics in original). Second, the DOL disagrees with the Sixth Circuit's conclusion that Section 778.217(b)(1) requires an employer to reimburse delivery vehicles at the "actual amount" because it is a "tool." Instead, the DOL determined that a reimbursement for a delivery vehicle is governed under Section 778.217(b)(3):

> The plain language of WHD's regulations permits employers to reimburse a reasonable approximation of expenses insured for the employer's benefit rather than the actual amount of expenses incurred. The regulation defining "other facilities," 29 C.F.R. § 531.32(c), states that "reimbursement for expenses such as … 'travel expenses'" are addressed in 29 C.F.R. § 778.217. Section 778.217, in turn, states that reimbursements may be in an amount that "reasonably approximates the expense occurred[.] *Id.* § 778.217(a). One of that regulation's examples explicitly state that an employer can reimburse the "actual *or reasonably approximate* amount" of an employee's expenses to travel "by private car[.]" *Id.* at 778.217(b)(3) (emphasis added) … One reason a reasonable approximation may be important is that precise calculations may not be practical, or even possible, depending on the nature of the expense. … As the plain language of the regulation makes clear, a reasonable approximation is sufficient.

*Id.* at 2 (emphasis in original). In this way, and in this circuit, the DOL's opinion letter is of the same weight as the Sixth Circuit's decision or district court decisions. None of those are binding or entitled to any deference except to the extent they are persuasive.

To be sure, our own circuit has made clear that agency opinion letters do not warrant *Chevron*-type deference; instead, they are assessed under *Skidmore*. *Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). "Under *Skidmore*, interpretations of 'an agency charged with the mission of enforcing a particular statute, 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1154 (N.D. Ala. 2018), *opinion vacated in part on reconsideration* Case No. 7:13-cv-01275-LSC (Doc. # 307) (Aug. 7, 2018) ("*Sullivan II*") (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 224 (2015) (in turn quoting *Skidmore*, 323 U.S. at 140)). "Under *Skidmore*, an agency's interpretation may merit some deference depending upon the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1305 (11th Cir. 2008) (citations omitted).

Here, the court finds that the 2020 Opinion Letter is entitled to *Skidmore* deference. The Opinion Letter thoroughly analyzed the DOL's Wage and Hour Division's recordkeeping requirements and found none requiring an employer to keep track of an employee's actual vehicle-related expenses so that it could reimburse the employee at that specific amount. Instead, employers are only required to keep (1) a record of "the dates, amounts, and nature of the items"

that make up either additions to or deductions from nonexempt employees' wages and (2) all records used to determine "the original cost, operating and maintenance cost, and depreciation and interest charges," if those costs are involved in the additions or deductions. *See* 29 C.F.R. §§ 516.2(a)(10), 516.6(c).

Further, the 2020 Opinion Letter is consistent with the DOL's previous pronouncements on this issue. Specifically, the DOL's Wage and Hour Division's Field Operations Handbook[5] ("FOH") states:

> **Car expenses: employee's use of personal car on employer's business.**
>
> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> > (a) *As an enforcement policy*, the IRS *standard business mileage rate* found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate … represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rate should be applied on a pro-rate basis.
> >
> > (b) The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes *whether or* not the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

U.S. Dep't of Labor, Field Operations Handbook § 30c15 (2016) (emphasis in original). Thus, the FOH makes clear that reimbursement of an employee's actual costs is not the only way an

---

[5] The court notes that the FOH is like non-binding case law and the DOL opinion letters: it does not establish a binding legal standard on the public and is not "a device for establishing interpretative policy." *Field Operations Handbook*, U.S. Dep't of Labor, https://www.dol.gov/agencies/whd/field-operations-handbook (last accessed Mar. 19, 2024). Instead, "[t]he FOH reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator. *Id.* The Eleventh Circuit has held that the FOH, as an agency's internal directives to its employees, is without "the force and effect of law" and is therefore only persuasive authority. *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001).

employer may handle use of personal vehicles and even points to the IRS standard business mileage rate as an alternative means of reimbursement. *Id.*

Importantly, the 2020 Opinion Letter cites Section 30c15's language as prior precedent supporting its position that an employer is not required to reimburse an employee's actual costs:

> Here, the Department [of Labor] has promulgated an applicable regulation, and the FOH reflects that regulation. Section 778.217(c) states that reimbursements *at the same or less than* the IRS rate can qualify as reasonable *per se*, or that employers may use the actual or a reasonable approximation of the expenses. Section 30c15's instruction that, "[a]s an enforcement policy," the IRS rate "*may* be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices" is discretionary and consistent with the regulation: the FOH provides two means of calculation here, but that does not foreclose other methods, such as a reasonable approximation of expenses.

2020 WL 5367069, at *3.

Finally, the court finds the reasoning behind the DOL's conclusion to be compelling. The task of forcing an employer to keep up with each employee's individual expenses would be insurmountable. Instead, it makes logical sense for an employer to have a reasonably-approximated flat rate at which it reimburses <u>all</u> employees, for simplicity's sake. It thus follows that if the employer makes an *unreasonable* approximation, the employee can then claim that his wages were reduced because of expenses that were not sufficiently reimbursed – which is precisely the claim asserted here. *See Kennedy*, 2020 WL 5076756, at *3.

Therefore, the court finds the Sixth Circuit's non-binding decision in *Parker v. Battle Creek Pizza, Inc.* unpersuasive, and is instead persuaded by those courts holding that an employer may reasonably approximate an employee's vehicle costs for reimbursement purposes. Having answered this question, another one looms: whether an <u>employee</u> may also reasonably approximate his vehicle costs in an FLSA case.

15

###### b.    Whether an employee may reasonably approximate his vehicle costs

Most of the district courts that have analyzed this issue have held that an employee may also reasonably approximate his or her vehicle costs in an FLSA case. *See, e.g., Benton v. Deli Mgmt., Inc.*, 396 F. Supp. 3d 1261, 1274-75 (N.D. Ga. 2019); *Sullivan I*, 2017 WL 10575860, at *5-7; *Wass v. NPC Int'l, Inc.*, 2010 WL 7762621, at *3 (D. Kan. 2010) ("FLSA plaintiffs could rely on estimates instead of actual figures if evidence allowed such a reasonable inference"); *Perrin v. Papa John's Int'l, Inc.*, 818 F. Supp. 2d 1146, 1149-50 (E.D. Mo. 2011).

And, other courts in this circuit have reached this same conclusion. For example, in *Sullivan I*, Judge Coogler determined that, under § 778.217, an employer may <u>either</u> reasonably approximate the amount of expenses in reimbursing an employee or pay an employee his actual expenses. 2017 WL 10575860, at *7. As a result, the *Sullivan I* court joined a host of out-of-circuit courts in holding that a plaintiff asserting a minimum wage claim is also entitled to reasonably approximate expenses and need not prove actual expenses. *Id.* This sentiment was echoed by another court in this circuit. *Benton*, 396 F. Supp. 3d at 1274-75. There, the court found that an employee could reasonably approximate expenses because "[n]othing in the FLSA or regulations requires proof of actual expenses; in fact, the regulations suggest the opposite by their allowance for employers to pay employees a 'reasonable estimate' of the employee's expenses to avoid FLSA liability." *Id.* at 1275 (citing 29 C.F.R §§ 778.217(c) ("It should be noted that only the actual *or reasonably approximate* amount of the expense is excludable from the regular rate") (emphasis added) and 778.217(a)(3) (referring to "actual *or reasonably approximate* amount expended by an employee")).

Defendant argues that allowing Plaintiff to prove his vehicle damages by a reasonable estimate violates the framework established in *Anderson v. Mt. Clemens Pottery Co*., 328 U.S.

16

680 (1946). In *Anderson*, the Supreme Court implemented the following burden-shifting standard for proving illegal compensation in a FLSA case:

> An employee who brings suit under § 16(b) of the [Fair Labor Standards] Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying his burden of proof at trial.
>
> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises … In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as matter of *just and reasonable inference*. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 686-88 (emphasis added).

Essentially, Defendant asserts that, because it had no statutory duty to keep records of Plaintiff's vehicle expenses, Plaintiff cannot take advantage of *Mt. Clemens*' "just and reasonable inference" standard in this matter. In its view, this also means that Plaintiff should not be allowed to reasonably approximate his damages. But, in advancing this position, Defendant mistakenly conflates the "just and reasonable inference" standard from *Mt. Clemens* with the "reasonably approximate" standard that courts have employed in other cases. The two are not the same.

The distinction between these two standards is made clear in *Sullivan II*.[6]  *See* 362 F. Supp. 3d 1139. There, Judge Coogler agreed with Defendant's assertion that an employer has no statutory requirement to keep and maintain an employee's personal vehicle records. As a result, the *Sullivan II* court held that an FLSA plaintiff was not entitled to take advantage of the *Mt. Clemens*' "just and reasonable inference" standard, and instead was required to prove his damages using the "normal standard applied to FLSA minimum-wage violations." *Id.* at 1153. But, the *Sullivan II* court also readopted its earlier decision (in *Sullivan I*) that such a plaintiff may, in meeting this burden, "reasonably approximate" any vehicle expenses incurred on behalf of his employer. *Id.* at 1155-56 (addressing the earlier decision "where the Court ultimately determined that [Plaintiff] could reasonably approximate expenses incurred on behalf of an employer"). Therefore, the *Sullivan II* court made clear that an FLSA plaintiff who cannot take advantage of the *Mt. Clemens* "just and reasonable inference" standard may nevertheless prove his damages through a reasonable approximation.

The court agrees with Judge Coogler. Therefore, Plaintiff is entitled to partial summary judgment on this issue and may prove his claims through estimates of his vehicle costs, rather than showing actual costs.

### 3.      Tip Credits

Plaintiff also seeks summary judgment on the issue of whether tips he made in excess of the amount of the "tip credit" may be considered in determining his net wages at trial.

Defendant argues that this issue is premature. Specifically, Defendant contends that "[t]his part of his motion appears to be preemptive in the event PJ Cheese 'attempt[s] to claim the benefit of tips received by Mr. Allen in excess of a validly invoked tip credit'. …But PJ

---

[6] The court notes that one subsection of *Sullivan II* was vacated in part on other grounds in August of 2018. *See Sullivan v. PJ United, Inc.*, Case No. 7:13-cv-01275-LSC (Aug. 7, 2018) (Doc. # 307). However, the portions of *Sullivan II* cited in this memorandum opinion remain good law.

Cheese has made no such attempt. Therefore, the relief Mr. Allen seeks is in the nature of an impermissible advisory opinion." (Doc. # 85 at 19).

The court agrees with Defendant on this issue. The Eleventh Circuit has previously noted that "[s]trict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting judicial resources through review of potential or abstract disputes." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). Because Defendant has not argued that tips received in excess of the tip credit should be credited towards Plaintiff's net wages, any analysis of the merits of that argument is premature. Therefore, Plaintiff is not entitled to summary judgment on that issue.

**B.    Defendant's Motion for Summary Judgment (Doc. # 80)**

Defendant PJ Cheese, Inc. has also filed a Motion for Summary Judgment. (Doc. # 80). Defendant argues that it is entitled to summary judgment on: (1) Plaintiff's hostile work environment claims under Section 1981 and Title VII; (2) Plaintiff's disparate treatment discrimination claims under Section 1981 and Title VII; (3) Plaintiff's retaliation claims under Section 1981 and Title VII; and (4) Plaintiff's FLSA claims. The court examines each argument below.

**1.    Hostile Work Environment**

Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claims under Section 1981 and Title VII. "To prove a hostile work environment claim, an employee must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smelter v. S. Home Care*

*Servs. Inc*, 904 F.3d 1276, 1284 (11th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff asserts that he was subjected to a racially hostile work environment based upon (1) the "racially hostile and threatening comments/slurs" made by Fleming during Plaintiff's employment; (2) Fleming brandishing a firearm and threatening his life while calling him racial slurs; and (3) Fleming's statements that "management would handle" Plaintiff's complaints by firing Plaintiff. (Doc. # 87 at 9).

When an employee's hostile work environment claim is based on race, he must prove five elements: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the environment under a theory of vicarious or direct liability. *Smelter*, 904 F.3d at 1284 (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Defendant argues that summary judgment in its favor is proper because Plaintiff cannot meet the fourth prong – that is, Defendant contends that the Rule 56 record shows Plaintiff cannot establish that the alleged harassment was sufficiently severe or pervasive to succeed on this claim.

The court considers the following four factors in evaluating whether harassment was sufficiently severe and pervasive: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening and humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23); *Harrison v. Am. Family Care*,

2006 WL 8437413, at *3 (N.D. Ala. 2006). No single factor is required for a plaintiff to succeed. *Harris*, 510 U.S. at 23.

Defendant argues that there was only a single incident between Plaintiff and Fleming during his employment – the fight at work where Fleming called Plaintiff "Boy" and "Nigger" and brandished a gun. Defendant contends that there was only one incident and the Rule 56 evidence is insufficient as a matter of law to establish a hostile work environment. The court disagrees on both scores.

First, although Defendant argues that only one incident of a hostile interaction occurred between Fleming and Plaintiff, Plaintiff has presented evidence to the contrary. Plaintiff testified that he complained numerous times throughout his employment to multiple different supervisors about comments that Fleming repeatedly made to him. (Doc. # 81-1 at 13, 14, 24). Further, Donovan Adams -- a coworker of Plaintiff -- testified that he witnessed Fleming calling Plaintiff "Boy" on multiple occasions, as well as "Monkey" and "Nigger." (Doc. # 84-8). Therefore, there is a question of fact about the frequency of Fleming's racially hostile conduct.

In addition, a reasonable juror could find Fleming's actions were severe, physically threatening, and humiliating. The Eleventh Circuit has previously held that the use of the word "nigger" even one time in the workplace is egregious, particularly when it is directed towards another person in an offensive or humiliating manner. *See Smelter*, 904 F.3d at 1285-86. Further, the use of this word, when accompanied by other racial slurs such as the term "monkey," is sufficiently severe to create a hostile work environment. *See id.* at 1286; *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) ("The use of the term 'monkey' and other similar words have been part of actionable racial harassment claims across the country."). And, the Eleventh Circuit has noted that the added presence of a potential weapon during this encounter

could weigh heavily on a juror's analysis of both the severity and physically threatening factors. *Jones*, 683 F.3d at 1303; *see also Shine v. Univ. of Ala. - Birmingham*, 2023 WL 1099766, at \*3 (11th Cir. 2023).

After carefully examining the Rule 56 evidence, the court concludes it is for a jury to decide the fact issues related to Plaintiff's hostile work environment claims under Section 1981 and Title VII. Because a reasonable trier of fact could conclude that the alleged racially hostile environment was sufficiently severe and pervasive to be actionable, Defendant is not entitled to summary judgment on this claim.

### 2.      Disparate Treatment

Counts I and II of Plaintiff's First Amended Complaint also allege that Plaintiff suffered racially discriminatory treatment (*i.e.*, disparate treatment) in violation of Title VII and Section 1981 because he was "terminated after complaining about the race discrimination and harassment he endured during the employment" and for "refus[ing] to resign for engaging in protected activity concerning his complaints against Defendant." (Doc. # 7 at 18, 19).

Title VII and Section 1981 are subject to the same standards of proof and employ the same analytical framework. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). "Accordingly, the elements of a § 1981 race discrimination claim in the employment context are the same as a Title VII disparate treatment claim." *Jenkins v. Tuscaloosa City Bd. of Educ.*, 72 F. Supp. 3d 1238, 1255 (N.D. Ala. 2014). Because the substantive analysis related to these two claims is the same, it is appropriate to simultaneously discuss whether Plaintiff has carried his burden with respect to both his Title VII and Section 1981 claims.

"Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin …'" *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1288 (11th Cir. 2003) (quoting 42 U.S.C. § 2000e-2(a)(1)). Plaintiff is not required to present direct proof that race was the reason for his employer's challenged decision; instead, he may rely either on direct or circumstantial evidence of discrimination. *See, e.g.*, *id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 526, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) ("Because Title VII tolerates no racial discrimination, subtle or otherwise, we devised a framework that would allow both plaintiffs and the courts to deal effectively with employment discrimination revealed only through circumstantial evidence." (internal quotations and citations omitted)).

Defendant argues that summary judgment in its favor is proper on Plaintiff's disparate treatment discrimination claims because Plaintiff has not brought forward either direct or circumstantial evidence of racial discrimination. The court considers those arguments as well as whether Plaintiff has presented a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination.

### a.    Direct Evidence

Direct evidence of discrimination is "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Maynard*, 342 F.3d at 1288 (citing *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997)). If a plaintiff offers direct evidence and the trier of fact accepts that evidence, then the plaintiff has proven discrimination. *McCarthney v. Griffin-Spalding Cnty. Bd. of Educ.*, 791 F.2d 1549, 1553 (11th Cir. 1986).

Plaintiff offers the following circumstances as direct evidence of discrimination: (1) Fleming's threatening and discriminatory use of the words "boy", "nigger", and "monkey" when issuing orders to Plaintiff as a supervisor and (2) Fleming's comments to Plaintiff and other

African Americans after Plaintiff reported the behavior that "I [Fleming] will be cleared" and that Plaintiff's complaints of discrimination would be "taken care of by management." (Doc. # 87 at 14-15). But, these assertions do not show there is direct evidence in this case. As previously mentioned, "direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any further inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, "remarks by non-decisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination." *Sirpal v. Univ. of Miami*, 509 Fed. App'x 924, 926 (11th Cir. 2013) (quoting *Standard*, 161 F.3d at 1318).

Plaintiff maintains that Herrin was the individual who made the final decision to fire him. (*See* Doc. # 81-1 at 23, 24). But, the only discriminatory remarks that Plaintiff alleges were made came from Fleming – not Herrin. Therefore, because Plaintiff offers only remarks by a non-decisionmaker, this is not direct evidence of discrimination. *Sirpal*, 509 Fed. App'x at 926; *Standard*, 161 F.3d at 1318.

Plaintiff also argues that there is direct evidence of discrimination here because this is a "cat's paw" case. "In a so-called 'cat's paw' case, an employer may be held liable for employment discrimination when the decisionmaker, though unbiased himself relies – at least in part – upon the recommendation of a lower-level supervisor who acts with discriminatory intent." *Hartwell v. Spencer*, 792 Fed. App'x 687, 693 (11th Cir. 2019) (citing *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (per curiam) and *Staub v Proctor Hosp.*, 562 U.S. 411, 419-20 (2011)). "In such a case, 'the plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the

employee.'" *Hartwell*, 792 Fed. App'x at 693 (quoting *Stimpson*, 186 F.3d at 1331). So, it is true that in a cat's paw situation the harasser's statements may be direct evidence of discrimination even though the harasser was a non-decisionmaker. *Sirpal*, 509 Fed. App'x at 927 (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998)).

Plaintiff contends that Fleming's racial animus towards him would permit a reasonable juror to determine that, without Fleming's influence upon him and suggestion to do so, Herrin would not have discharged Plaintiff. (Doc. # 87 at 16). But, Plaintiff himself directly contradicts this assertion in his deposition. Although he alleges that Fleming threatened his employment by saying "I'm going to get you fired," he also clearly conceded (1) that he does not know if Fleming ever even talked to Herrin about terminating him and (2) that he was such a good employee that Fleming himself told him that he did not want him to leave. (Doc. # 81-1 at 25).

"In a cat's paw situation, the harasser *clearly* causes the tangible employment action, regardless of which individual actually signs the employee's walking papers." *Sirpal*, 509 Fed. App'x at 927 (citations omitted) (emphasis added). Here, Plaintiff has not offered *any* evidence showing that Fleming *clearly* caused his termination; therefore, he has not produced any direct evidence of racial discrimination to be considered on summary judgment.

### b.    Circumstantial Evidence

To prevail on a claim for discrimination under Title VII based on the well-known *McDonnell Douglas* framework, in a case where plaintiff was not replaced by someone of a different race, a plaintiff may show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Defendant

argues that it is entitled to summary judgment on this claim because Plaintiff has not presented evidence of a similarly situated employee who was treated better than him.

To satisfy the fourth prong of the *McDonnell Douglas* elements, a plaintiff must show that his employer treated similarly situated employees outside his protected class – *i.e.*, "comparators" -- more favorably than him. *Wood v. K-Mart Corp.*, 273 Fed. App'x 806, 807 (11th Cir. 2008). The Eleventh Circuit has clarified that to be a valid comparator, an employee must be "similarly situated in all material respects," but need not be "nearly identical" to the plaintiff. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019). In determining whether a comparator is similarly situated in "all material aspects" to the plaintiff, courts consider whether a comparator: (1) engaged in the same basic conduct or misconduct as the plaintiff; (2) was subject to the same employment policies and guidelines as the plaintiff; (3) was under the jurisdiction of the same supervisor as the plaintiff; and (4) shared the plaintiff's experience and disciplinary history. *Id.* at 1227-28; *see also Davis v. Dunn Const. Co.*, 872 F. Supp. 2d 1291, 1310 (N.D. Ala. 2012); *Gaines v. Johnson*, 44 F. Supp. 3d 1169, 1178 (N.D. Ala. 2014).

As to evidence of comparators, Plaintiff argues that he was "treated differently from his similarly situated white co-workers, Fleming and Herrin." (Doc. # 87 at 13). However, Fleming and Herrin are not similarly situated in "all material aspects" to the Plaintiff for Title VII and Section 1981 purposes for multiple reasons.

First, Plaintiff held a different position with different responsibilities than those held by either Fleming or Herrin. "Although 'differences in job ranks between a plaintiff and another employee are not, in and of themselves, dispositive,' job rank and responsibilities are facts the court must consider." *Richardson v. Rite Aid Corp.*, 2011 WL 13229436, at *4 (N.D. Ala. 2011)

(quoting *Rioux v. City of Atlanta*, 520 F.3d 1269, 1281 (11th Cir. 2008)). Plaintiff served as a part-time delivery driver who sometimes performed indoor tasks such as helping in the kitchen, answering phones, doing dishes, or cleaning. (Docs. # 79-1 at 7-8; 79-5 at 49). In contrast, Herrin was the General Manager "responsible for the day-to-day operation of a Papa Johns restaurant, ensuring product quality, customer satisfaction, restaurant profitability and understanding of Papa John and PJU culture." (Doc. # 79-1 at 68). Fleming served as an Assistant Manager who "assist[ed] the [General Manager] in the day-to-day operations of the restaurant, direct[ed] the work of two or more Team Members and coach[ed] and train[ed] personnel." (*Id.*). Importantly, both Herrin and Fleming had supervisory responsibility over Plaintiff. Both the Eleventh Circuit and this court have found that the fact that a comparator is the employee's supervisor weighs against them being considered a similarly situated comparator. *See Skelton v. Birmingham Airport Auth.*, 2021 WL 4476800, at *3 (11th Cir. 2021); *Langford v. Magnolia Advanced Materials, Inc.*, 709 Fed. App'x 639, 641 (11th Cir. 2017); *Smith v. Sunbelt Rentals, Inc.*, 356 Fed. App'x 272, 279 (11th Cir. 2009); *Richardson*, 2011 WL 13229436, at *4; *Cockrell v. Pickens Cnty. Comm.*, 2023 WL 6276706, at *2 (N.D. Ala. 2023).

Further, although Plaintiff alleges that Herrin and Fleming are valid comparators, he does not offer any explanation as to how he contends he engaged in the same behavior they did but was treated less favorably. That is, although Plaintiff asserts that he was fired because he complained about Fleming's racially hostile comments, he does not allege in any way that Fleming or Herring ever made complaints similar to his without facing repercussions. Nor does he offer any proof that they shared similar experiences and/or disciplinary history at PJ Cheese.

Finally, to the extent Plaintiff attempts to claim he was discriminated against for being terminated based on his low Drivosity score, that argument also fails because he does point to

any comparators who were treated more favorably than him. Although Plaintiff makes a blanket allegation that other employees also scored low Drivosity scores without facing termination (Doc. # 81-1 at 24), he does not point to even one other employee with an equally low score in support of this claim, much less how any such person was treated better than him.

As a result, Plaintiff has failed to establish a prima facie case of racial discrimination. Of course, this is not the end of the analysis of his discrimination claim. He may still survive summary judgment under the alternate "convincing mosaic" theory. The court analyzes that question below.

### c.     "Convincing Mosaic" of Circumstantial Evidence

Though the parties have not briefed this issue, out of an abundance of caution, the court also considers whether Plaintiff may proceed with his disparate treatment discrimination claim under a "convincing mosaic" theory. In *Smith v. Lockheed-Martin*, the Eleventh Circuit held that a plaintiff need not always establish a prima facie case under the *McDonnell Douglas* framework to present a triable Title VII claim of unlawful discrimination. 644 F.3d 1321, 1328 (11th Cir. 2011). Instead, a plaintiff may also present a triable issue of discriminatory intent -- even if he cannot identify a similarly situated comparator or replacement -- through a convincing mosaic of circumstantial evidence from which a reasonable jury could find intentional discrimination by the employer. *Id.*; *Lewis*, 934 F.3d at 1185. "A plaintiff may establish a convincing mosaic by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (internal quotations and citations omitted).

In *Lockheed-Martin*, the circumstantial evidence presented by the plaintiff was overwhelming. It included: (1) a documented history of disparate treatment of Caucasian and African-American employees; (2) a spreadsheet listing employees under investigation by name and race that the defendant's disciplinary review committee used to make disciplinary decisions; and (3) a news program reporting the defendant's struggles with racism in the workplace, which focused on violence by a white supremacist. 644 F.3d at 1329-40. The Eleventh Circuit concluded that the plaintiff presented a triable race discrimination claim because, among other reasons, the defendant "consciously injected race considerations into its discipline decision making without an adequate explanation for doing so." *Id.* at 1341.

A review of the Rule 56 evidence presented here shows that it does not create a "convincing mosaic of circumstantial evidence" like that in *Lockheed-Martin*. This is so for several reasons. First, Plaintiff does not point to any evidence that would allow a jury to infer intentional discrimination by Herrin, the decisionmaker. Instead, each statement that Plaintiff argues shows discriminatory intent was made by Fleming. As discussed above, Plaintiff has not brought forward any proof that Fleming played any part in his termination. The Eleventh Circuit has explained that "comments by non-decisionmakers do not raise an inference of discrimination…". *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355 (11th Cir. 1999).

To be sure, Plaintiff points to the fact that his termination occurred after complaining about Fleming and suggests this is suspicious timing from which discriminatory intent could be inferred. However, that "evidence" does not tend to show that Plaintiff's termination was motivated by *race*, which is the basis of Plaintiff's Title VII and Section 1981 claims in Count I and II alleging race discrimination. Rather, Plaintiff's timing evidence, at most, supports only that he was potentially fired for "making *complaints related* to race discrimination, which is the

crux of a cause of action under Title VII and [Section] 1981 for unlawful retaliation." *Smitherman v. Decatur Plastics Prods., Inc.*, 2017 WL 3668176, at *7 (N.D. Ala. 2017) (citing 42 U.S.C. § 2000e-3(a); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446-52 (2008)). Plaintiff has asserted such retaliation claims in Counts III and IV of his Complaint, and the court addresses them in detail below. But, the fact that Plaintiff was fired after complaining to Herrin about Fleming's alleged comments does nothing to support an inference that he was fired because of his race.

Likewise, Plaintiff presents no evidence of similarly situated white employees who he contends were systematically treated better than him. Although he makes a general, unsupported assertion that white delivery drivers were treated differently than similarly situated African Americans (because the former supposedly made a higher per-mile reimbursement on deliveries), he does not identify even one similarly situated white delivery driver who actually received a higher mileage rate. In fact, he actually negates his own contention by acknowledging that the white employees making more money were "seniority drivers." (Doc. # 81-1 at 19). Therefore, there is no Rule 56 evidence that these individuals were similarly situated to him.

Finally, Plaintiff has not shown that Herrin's reason for firing him was pretextual. The Eleventh Circuit has stated that a plaintiff can show pretext within the "convincing mosaic" framework in one of three ways:

> (i) casting sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were not what actually motivated its conduct, (ii) showing that the employer's articulated reason is false and that the false reason hid discrimination, or (iii) establishing that the employer has failed to clearly articulate and follow its formal policies.

*Lewis*, 934 F.3d at 1186. Plaintiff alleges that Herrin's articulated reason for terminating him because he scored a low Drivosity score was false. Instead, he believes he was fired for

complaining about Fleming's conduct towards him. But, once again, such an allegation simply does not support the proposition that Plaintiff was fired because of his race; instead, it sounds in retaliation. As a result, it does not help establish a convincing mosaic of circumstantial evidence from which a reasonable jury could find intentional race discrimination.

Therefore, Plaintiff has not presented direct or circumstantial evidence of race discrimination or a convincing mosaic of circumstantial evidence from which a reasonable jury could find intentional discrimination by Defendant. As a result, Defendant is entitled to summary judgment on Plaintiff's disparate treatment discrimination claims under Title VII and Section 1981.

### 3.    Retaliation

Defendant also claims that it is entitled to summary judgment on Plaintiff's retaliation claims. Plaintiff asserts that he was unlawfully retaliated against in violation of § 1981 and Title VII when he was fired for complaining to his managers about unlawful employment practices, discrimination, and harassment on the basis of race. (Doc. # 7 at 19).

The opposition clause of Title VII's anti-retaliation provision "forbids an employer from retaliating against an employee because he has opposed 'an unlawful employment practice.'" *Willis v. Publix Super Markets, Inc.*, 619 Fed. App'x 960, 962 (11th Cir. 2015) (citing 42 U.S.C. § 2000e-3(a)). Retaliation claims are also cognizable under § 1981 when an employee can show that he suffered an adverse employment action because he opposed *race* discrimination. *Id.* Both Title VII and Section 1981 retaliation claims are analyzed under the same framework. *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. Oct. 27, 2023) (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345

(2006)). But, to be clear, Title VII's definition of protected activity is broader than that encompassed by § 1981 because a claimant under § 1981 must show that he was retaliated against because of opposition to race (as opposed to other forms of) discrimination. Here, Plaintiff claims he was discharged because he opposed race discrimination.

To establish a *prima facie* case of retaliation under Title VII and Section 1981, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1212-13 (11th Cir. 2008).

Defendant first argues that Plaintiff did not engage in statutorily protected activity because he did not complain about conduct made unlawful under Title VII or Section 1981. (Doc. # 92 at 8). But, Plaintiff testified that he complained multiple times to various managers about ongoing racially hostile interactions with Fleming (Doc. # 81-1 at 13-14, 16-17) and his belief that white employees were treated more favorably and reimbursed at a higher rate than black employees (*id.* at 18-19). Therefore, the Rule 56 record contains evidence from which a jury could find that Plaintiff engaged in statutorily protected activity. *See Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002) (noting that an employee may engage in protected activity by "voicing complaints of [racial] discrimination" to his employer).

In addition, Defendant argues that Plaintiff cannot establish a *prima facie* case of retaliation because (1) he cannot show he suffered an adverse employment action and, (2) in any event, he cannot show a causal connection exists between his complaints to management and his termination.

As to Defendant's first argument, it maintains that Plaintiff voluntary resigned from his position at PJ Cheese. (Docs. # 79-1 at 22; 79-5 at 48). Specifically, Defendant asserts that "[Plaintiff] simply thought he had been fired such that he did not return to work and was subsequently deemed to have quit." (Docs. # 82 at 10; 79-5 at 48). But, as Plaintiff has testified, he did not quit; instead, he says on March 14, 2019, he was terminated by Herrin. (Docs. # 7 at ¶ 34; 81-1 at 24; 81-2 at 3). Therefore, a genuine issue of material fact exists regarding whether Plaintiff suffered an adverse employment action.

Defendant also argues that, even if Plaintiff *was* terminated, summary judgment in its favor is appropriate because there is no causal connection between Plaintiff's protected activity and his alleged termination. To satisfy the causal connection requirement, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (in turn quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). Generally, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection." *Brungart*, 231 F.3d at 799; *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Where temporal proximity is the *only* evidence of causation, that proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In the absence of other evidence indicating causation, when there is a substantial delay between the protected expression and the adverse action, a retaliation claim necessarily fails. As the Eleventh Circuit has held, an adverse employment action that occurs within one month of the protected activity satisfies the causation

requirement for summary judgment purposes. *See Summers v. City of Dothan*, 444 Fed. App'x 346 (11th Cir. 2011); *Donnello v. Frehauf Corp.*, 794 F.2d 598, 601-02 (11th Cir. 1986). In contrast, a gap of two months or longer between the two events has been found to be a sufficient delay so as to preclude an inference of causation. *See Williams v. Waste Mgmt., Inc.*, 411 Fed. App'x 226, 229-30 (11th Cir. 2011) (holding that a two-month gap is not "very close"); *Thomas*, 506 at 1364 (finding that a period of three months was too long to create an inference of causation and stating that "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough").

Defendant asserts that even if Plaintiff <u>was</u> fired, the three-month gap between Plaintiff's complaint to Herrin about Fleming in mid-December and his "termination" in March does not indicate that a causal connection between the two events can be inferred.  (Doc. # 82 at 10-11). But, this argument misses the mark. Plaintiff testified that he complained to numerous managers about Fleming and did so multiple different times during his employment. (Doc. # 81-1 at 13-14, 17). And, Plaintiff also testified that he complained to Herrin about one of his interactions with Fleming on the very day he was terminated. (*Id.* at 23-24). It is for a jury to decide if this actually occurred because there is evidence from which a reasonable juror could find a sufficient connection between Plaintiff's protected conduct and his alleged termination. As a result, Defendant's summary judgment motion directed at Plaintiff's retaliation claim is due to be denied.

### 4.    FLSA Claim

Defendant next argues that it is entitled to summary judgment on Plaintiff's FLSA claim. As the court understands this argument, Defendant maintains that it is entitled to at least partial summary judgment on this issue for three reasons: (1) Plaintiff was not entitled to receive certain

fixed costs associated with owning his vehicle and thus cannot show he was paid less than minimum wage by not being reimbursed for these costs; (2) Defendant had no duty to reimburse Plaintiff at the IRS rate; and (3) no reasonable factfinder could find that Defendant's reimbursement rate of $0.27 per mile was unreasonable. The court addresses each argument below.

> ### a.   Whether Defendant was required to reimburse Plaintiff for fixed costs associated with owning a vehicle used for deliveries

Defendant first argues that the court should enter summary judgment in its favor because it is undisputed that it had no duty to reimburse Plaintiff for fixed costs associated with using his vehicle for deliveries.

Under the FLSA, employers are required to pay employees at least $7.25 per hour. 29 U.S.C. § 206(a). Again, Plaintiff's claims are based on a regulation under the FLSA referred to as the "anti-kickback rule." 29 C.F.R. § 531.35. That regulation provides:

> "[W]ages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [FLSA] will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee … For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid to him under the Act.

*Id.* "In other words, a kickback occurs when the cost to the employee of tools specifically required for the performance of the employee's work 'cuts into' his or her legally required minimum wage." *Edwards v. PJ Ops Idaho, LLC,* 2023 WL 4868304, at *3 (citing 29 C.F.R. § 531.35).

Here, the parties' dispute turns in part on whether Defendant was required to reimburse Plaintiff for the fixed costs associated with using his vehicle for work, such as insurance. *See Benton*, 396 F. Supp. 3d at 1270. Plaintiff argues that his payment of these fixed costs to use his vehicle on the job resulted in a "kick-back" of a portion of his wages to PJ Cheese, and that Defendant must reimburse him for the fixed costs of driving his car, including insurance – to the extent those costs reduced his net wages below the minimum wage threshold. (Doc. # 87 at 24-25).

Defendant's response is simple: it contends that summary judgment in its favor is appropriate on this claim because it was not required to reimburse fixed costs associated with Plaintiff's vehicle. That is, Defendant argues that, because Plaintiff used his vehicle in day-to-day life, and not solely for his employment, Plaintiff's vehicle is not a "tool of the trade" and Defendant only has a duty to reimburse Plaintiff for variable costs associated with his on-the-job use of his vehicle, including "gas, periodic mileage-based maintenance, and depreciation associated only with the vehicle's employment use." (Doc. # 82 at 17).

As discussed in depth above, the DOL has released an Opinion Letter discussing an employer's duty to reimburse delivery drivers that the court finds to be entitled to *Skidmore* deference. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2020 WL 5367069. In that letter, the DOL also examined whether an employer must reimburse delivery drivers for fixed vehicle expenses. Ultimately, the DOL landed on the following conclusion:

> Whether reimbursements must include fixed expenses depends on whether the expense is incurred primarily for the employer's benefit. 29 C.F.R. § 531.32. Generally, employers must reimburse expenses an employee incurs on its behalf or that an employee is required to expend primarily for the employer's convenience. It need not reimburse "expenses normally incurred by the employee of his own benefit." *Id.* at § 778.217(d). Ultimately, the question is whether the employee owns, and thus incurs the expense to operate, his or her car primarily for the employee's own benefit or for the employer's. However, the regulations

36

do not require employers to analyze each employee's personal practices to answer this question and determine individual reimbursement rates. Rather section 778.217 allows an employer to reimburse a reasonable approximation of expenses an employee would normally – that is, would in expected, everyday life – incur. This is similar to the IRS standard rate, which does not particularize for different types of vehicles, different styles of driving, different types of traffic, different prices of fuel, or different vehicle-regulation regimes on an individualized basis. Instead, the IRS standard rate is an attempt to approximate the expenses normally incurred by a typical American taxpayer per mile of vehicle usage.

Employers are expected to reimburse employees for fixed vehicle expenses only to the extent that the employee uses the vehicle as a tool of the trade, *i.e.*, primarily for the benefit of his or her employer. In that sense, making this fact-specific determination regarding vehicles may be more analogous to required clothing than it is to, for example, an arc welder's torch, generator, and gas supply. That is, a required uniform is a tool of the trade; if an employer requires an employee to wear a particular uniform, it must either supply the uniform or reimburse the employee to the extent the cost cuts into the required minimum wage. On the other hand, an employer that requires a certain style of dress rather than a particular, specific uniform need not reimburse the employee if the required clothing allows for variations in the clothing's detail and is more in the nature of street clothes that can be worn outside of the employee's job. In other words, the more distinctive the clothing and the more likely an employee would be to find its distasteful, uncomfortable, or inappropriate for everyday use, the more likely it is that the clothing would be found to be a uniform for which the employer would have to pay. …

**Therefore, when the employee's vehicle is not solely a tool of the trade, employers would be required to reimburse only the variable expenses attributable to the employee's use of the vehicle for the employer.** We expect that in some cases, reimbursement would include only costs that vary with the amount the employee users or the distance the employee drives the car. These costs might include, for instance, the cost of gasoline; the cost of periodic maintenance, such as oil changes and tire rotations and replacement; and the depreciation of the vehicle's value attributable to the employee's trips. For example, if an employee drives an extra 250 miles at the employer's behest rather than for the employee's own benefit, the gasoline, maintenance, and depreciation costs attributable to those 250 miles are incurred primarily for the employer's benefit rather than for the employee's own benefit.

Opinion Letter Fair Labor Standards Act (FLSA), 2020 WL 5367069, at *5-6 (emphasis added).

Therefore, the DOL makes clear that an employee is only required to reimburse an employee's

fixed vehicle costs if the vehicle is used solely as a tool of the trade, *i.e.*, primarily for the benefit of the employer. *Id.*

Here, nothing in the Rule 56 evidence establishes that Plaintiff's vehicle was solely a tool of the trade. To be sure, PJ Cheese requires all delivery drivers to maintain and pay for an operable, safe, and legally compliant automobile to use in delivering pizza. (Doc. # 83 ¶ 3). But, the requirements end there; neither PJ Cheese's policies nor its handbook mandate that employees have a specific make, model, size, or year of vehicle. In this way, Defendant's requirement that an employee own "any vehicle" is synonymous to another industry's requirement that its employees wear a generic "work uniform": to the extent it requires a particular uniform, "it must either supply the uniform or reimburse the employee to the extent the cost cuts into the required minimum wage." Opinion Letter Fair Labor Standards Act (FLSA), 2020 WL 5367069, at *5. But, an employer that requires only a certain style of dress rather than a particular, specific uniform has no duty to reimburse the employee for that clothing. *Id.*

Here, Plaintiff's vehicle is a tool of the trade when being used (and only when being used) to perform work deliveries. Indeed, courts have found that personal vehicles operated by pizza employees used to make deliveries qualify as tools of the trade and are governed by the anti-kickback statute. *See e.g., Edwards*, 2023 WL 4868304, at *3; *Benton*, 396 F. Supp. 3d at 1273 ("Plaintiffs' vehicles are a 'tool' of the trade when they are used for [Defendant's] business"). But, Plaintiff's vehicle is not solely used for work deliveries; he also uses it for non-work (personal) reasons. As a result, it is not *solely* a tool of the trade, and Defendant was required to reimburse Plaintiff for only the variable costs attributable to his time at work, such as gasoline, periodic maintenance, and the depreciation of the vehicle's value attributable to delivery runs.

Therefore, on Plaintiff's claim that Defendant was required to reimburse him for his fixed costs (such as insurance), Defendant is entitled to partial summary judgment.

Of course, this ruling does not completely defeat all of Plaintiff's claims under the FLSA. For example, Plaintiff may still contend that, even putting aside the issue of fixed costs, Defendant's reimbursement rate for his variable expenses -- such as gas, maintenance, and depreciation -- remains unreasonable under the FLSA and that Defendant's reimbursement rate reduced his wages below the minimum wage. The court addresses that question below. But, Plaintiff's claim for reimbursement for fixed costs associated with operating his vehicle is without merit.

### b.    Whether Defendant was required to reimburse Plaintiff at the IRS Rate.

Alternatively, Defendant asserts that it is entitled to partial summary judgment on its argument that it was not required to reimburse Plaintiff at the IRS rate.

In the complaint, Plaintiff alleges (among other things) that Defendant's reimbursement rate of $.27 per mile during his employment fell well below the IRS's standard mileage rate for the use of a car during that same period. (Doc. # 7 at ¶ 87). In response, Defendant asserts that "[p]izza delivery litigants have argued that the DOL's Field Operations Handbook requires employers to track, record, and reimburse an employee's actual expenses or reimburse at the IRS rate." (Doc. # 82 at 15). Defendant urges this court to find that was not required to reimburse Plaintiff for his expenses at the IRS rate, but rather it was only required to reimburse him at a reasonable rate.

The DOL Handbook § 30c15 states:

Car expenses: employee's use of personal car on employer's business.

In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

   (c) *As an enforcement policy*, the IRS *standard business mileage rate* found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate … represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rate should be applied on a pro-rate basis.

   (d) The IRS standard business mileage rate may be used in lieu of actual costs for FLSA purposes *whether or not* the employee will be able to take a deduction on his or her tax return for the business use of the employee's car.

(emphasis in original). Pointing to this language, numerous plaintiffs have argued -- and, indeed, some courts have even ruled -- that this language establishes that if an employer did not record and pay an employee his actual costs incurred during a delivery, the employer must reimburse that employee at the IRS standard business mileage rate. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014); *Orth v. J&J&J Pizza, Inc.*, 2020 WL 1446735, at *3 (D. Mass. 2020).

Once again, the court finds the DOL Opinion Letter assessing an employer's duty to reimburse delivery drivers to be persuasive on this issue. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2020 WL 5367069. The 2020 Opinion Letter clarifies that Section 30c15's language does not require an employer to choose between actual costs or the IRS guidelines:

A reimbursement to cover expenses incurred on the employer's behalf or for the employer's convenience is sufficient if it "reasonably approximates the expenses incurred." [29 C.F.R.] § 778.217(a). A reimbursement amount based on IRS

guidelines, including the annual standard mileage rates, "is per se reasonable." *Id.* § 778.217(c) …

The plain language of the regulations also allows employers to reasonably approximate an employee's expenses through methods other than the IRS business standard mileage rate – a rate that is itself only an approximation the expenses incurred to operate a vehicle …

…Section 778.217(c) states that reimbursements at *the same or less than* the IRS rate can qualify as reasonable *per se*, or that employers may use the actual or a reasonable approximation of the expense. Section 30c15's instruction that, "[a]s an enforcement policy," the IRS rate "*may* be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices" is discretionary and consistent with the regulations: the FOH provides two means of calculation here, but that does not foreclose other methods, such as a reasonable approximation of expenses …

…Neither the FLSA nor our regulations limits the sources an employer may consider or the methods it may use to determine whether a reimbursement reasonably approximates expenses. Whether particular information furnished by a specific source will enable a specific employer to reasonably approximate the expenses incurred to perform particular tasks at a particular site in a particular area depends on a myriad of particulars.

*Id.* at *2-4.

Courts both within and outside this district have held that nothing in the DOL's regulations requires an employer to reimburse an employee at the IRS rate. *See Sullivan II*, 362 F. Supp. 3d. at 1154-55 ("No regulation or statute supports [Plaintiff]'s contention that if Defendants do not keep records of [his] actuals costs … then Defendants' compliance with the minimum-wage laws must be measured by the IRS standard business mileage rate"); *Perrin*, 114 F. Supp. 3d at 721-22 (holding that although the IRS standard business mileage rate may be a reasonable approximation of an employee's vehicle expenses, authorities do not suggest it is the only reasonable approximation of such expenses); *Kennedy*, 2020 WL 5076756, at *6; *Blose*, 2020 WL 5513383, at *1-2.

This court joins these courts for this same reason. The language of Section 778.217 is clear: payments made by an employer to cover on-the-job expenses are not included in the employer's regular rate, so long as the amount of the reimbursement reasonably approximates the expenses incurred. 29 C.F.R. § 778.217. This includes "the actual or reasonably approximate amount expended by an employee" traveling over the road on his employer's business. 29 C.F.R. § 778.217(b)(3). The regulation does not require that this reasonable approximation be based on the IRS rate. Therefore, Defendant is entitled to partial summary judgment on this issue. It was not required to reimburse at the IRS rate.

### c.  Whether Defendant's reimbursement rate of $0.27 per mile was reasonable as a matter of law

Having found that Plaintiff is not entitled to fixed costs associated with his vehicle and that Defendant was not required to reimburse Plaintiff at the IRS rate, the court now turns its attention to the question at the center of this dispute: whether Defendant's reimbursement rate of $0.27 per mile was reasonable under the FLSA.

Employers are required to pay employees a wage of at least $7.25 per hour. 29 U.S.C. § 206(a). But, under the anti-kickback regulations, "wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and conditionally or 'free and clear.'" 29 C.F.R. § 531.35. Thus, a violation of the anti-kickback statute occurs when an employee's costs for use of tools of the trade, that are specifically required for the performance of his work, cuts into his legally required minimum wage. *Edwards*, 2023 WL 4868304 at *3. "In the pizza delivery context, the cost associated with delivering food for an employer is a 'kickback' to the employer unless it is fully reimbursed, lest a minimum wage violation be triggered." *Waters v. Pizza to You, LLC*, 538 F. Supp. 3d 785, 791 (S.D. Ohio 2021).

Defendant argues that its reimbursement rate of $0.27 per mile was reasonable and thus, it has no duty to reimburse any additional money to Plaintiff and summary judgment in its favor is proper. But, Plaintiff has presented evidence that his costs incurred while working for Defendant combined to total $0.53 per mile. (Doc. # 84-4). Therefore, he contends that when he received a reimbursement rate of only $0.27 per mile for variable costs, Defendant under-reimbursed him by about $0.26 per mile (or, as he calculates it, $2.99 per work hour), which resulted in a total wage payment of only $6.13 per hour – and a violation of both minimum wage requirements and the anti-kickback statute. (*Id.*; Doc. # 87 at 30-31). Therefore, the relevant inquiry is: what qualifies as a "reasonable" rate of reimbursement?

The answer is not clear. As one court has noted, "neither the regulations nor the FLSA define what constitutes a 'reasonable approximation' in this context." *Perrin*, 114 F. Supp. 3d at 721. However, case law offers some guidance as to whether the rate in *this* matter was reasonable. Courts have found that, although there is no requirement for employers to reimburse employees at the IRS rate, the IRS rate is per se reasonable and may be probative of whether an employer's approximation was reasonable. *See Rodriguez v. GC Pizza LLC*, 2022 WL 4368353, at *6 (D. Neb. 2022); *Kennedy*, 2020 WL 5076756 at *5-6. At the time Plaintiff was employed in 2018 and 2019, the IRS standard business reimbursement rate was $0.55 and $0.58 per mile, respectively.[7] In comparison, Defendant's reimbursement rate during the same time period was $0.27 per mile – less than half the IRS rate. Courts have also found that other companies that reimbursed their employees at rates higher than Defendant were not entitled to summary judgment. *See Lofton v. EYM Pizza of Illinois*, 2024 WL 1283743, at *2, 5 (N.D. Ill. Mar. 26, 2024) (finding that reimbursement rates between $0.33-$0.36 per mile were not entitled to

---

[7] *See* STANDARD MILEAGE RATES, IRS, https://www.irs.gov/tax-professionals/standard-mileage-rates (2023).

summary judgment because a reasonable juror could find it was unreasonable); *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 848-850 (S.D. Ind. 2018) (summary judgment denied because jury could find reimbursement rate of $0.37 was not reasonable). These cases weigh against the reasonableness of Defendant's reimbursement rate, and thus, against summary judgment on this issue.

Further, the vast majority of courts have held that when a plaintiff alleges that he was under-reimbursed and also offers an alternative rate that he contends is a more reasonable approximation of his expenses, the question of which rate is appropriate is not a question of law for the court, but a question of fact to be determined by a jury. *See Benton*, 396 F. Supp. 3d at 1275; *Perrin*, 114 F. Supp. 3d at 722; *Tyler*, 342 F. Supp. 3d at 848; *Lofton* 2024 WL 1283743 at *5. That may be too broad of a proposition. (Imagine if a plaintiff said that $10.00 per mile was a reasonable rate for reimbursement. That would hardly create an issue for a jury to decide). But here, Plaintiff has raised a genuine dispute about whether Defendant's estimate of his expenses was reasonable under the FLSA. Therefore, the court will leave to the jury the factual determination of whether Defendant's reimbursement rate of $0.27 per mile reasonably approximated Plaintiff's vehicle expenses.

As a result, the Rule 56 evidence does not establish that Defendant's reimbursement rate of $0.27 per mile is reasonable as a matter of law, and summary judgment on this issue is denied.

### C.    Plaintiff's Motions to Strike (Docs. # 86, 93)

After the parties filed their Motions for Summary Judgment, Plaintiff filed two separate Motions to Strike (Docs. # 86, 93). In these motions, Plaintiff requests that four of Defendant's evidentiary submissions be stricken from the record: (1) the declaration of Emily Herrin (Doc. # 81-9); (2) Defendant's edited version of the AAA table (Doc. # 81-11); (3) the declaration of

Brad Leonard (Docs. # 89-1; 90-1); and (4) an unauthenticated email chain (Docs. # 89-2; 90-2).[8] The court considers each of those requests to strike below.

### 1.     The Declaration of Emily Herrin (Doc. # 81-9)

First, Plaintiff asserts that the declaration of Emily Herrin (Doc. # 81-9) should be excluded from consideration because (1) the declaration was requested in discovery and not disclosed and (2) the type-faced signature does not satisfy 28 U.S.C. § 1746.

The court has not relied on Herrin's declaration in considering Defendant's Motion for Summary Judgment. Therefore, Plaintiff's motion to strike this declaration is moot.

### 2.     Defendant's AAA Table (Doc. # 81-11)

Second, Plaintiff moves to strike Defendant's Exhibit 81-11, a table that details the average costs of owning and operating an automobile. Defendant states that this table originally came from the Bureau of Transportation Statistics.[9] In preparing the document for summary judgment purposes, it appears that Defendant took the data for only the years 2018-2022 and prepared a new chart. In addition, Defendant calculated the national average variable cost per mile for each of these years. (Doc. # 81-11). Those calculations appear in red underneath each table of the exhibit.

Plaintiff admits that the table from the Bureau of Transportation Statistics is a public record. But, Plaintiff asserts that because Defendant altered the original version of the table to calculate the national average variable costs per mile and failed to disclose the declarant who

---

[8] On December 29, 2023, Defendant filed a document titled "Defendant's Supplemental Evidentiary Submission in Support of its Motion for Summary Judgment. (Doc. # 89). The Supplemental Evidentiary Submission contained two attachments: (1) the Declaration of Brad Leonard (Doc. # 89-1), and (2) an email chain from Defense counsel (Doc. # 89-2). A few days later, Defendant again filed the exact same Supplemental Evidentiary Submission (Doc. # 90) with the same attachments (Docs. # 90-1; 90-2).

[9] The table can be found at *Average Cost of Owning and Operating an Automobile*, BUREAU OF TRANSPORTATION STATISTICS, https://www.bts.gov/content/average-cost-owning-and-operating-automobilea-assuming-15000-vehicle-miles-year (last visited Apr. 9, 2024).

edited the record, the Exhibit cannot be reduced to an admissible form at trial and should be stricken.

Under Federal Rule of Evidence 1006, a party "may use a summary, chart or calculation to prove the content of voluminous writings, records, or photographs that cannot be conveniently examined in court." Once admitted, a Rule 1006 summary is considered substantive evidence. *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1159 (11th Cir. 2004). Rule 1006 summary evidence can be submitted at the summary judgment stage. *See Mitchell v. Univ. of La. Sys.*, 154 F. Supp. 3d 364, 380 n.8 (M.D. La. 2015) (citing *F.T.C. v. Hughes*, 710 F. Supp. 1520, 1524 (N.D. Tex. 1989)). For a summary to be admitted as substantive evidence, the proponent must provide a proper foundation for its admission, which should include the testimony of the witness who prepared it or supervised its preparation. *Brandon v. GlaxoSmithKline, LLC*, 2017 WL 2876184, at *7 (N.D. Ala. 2017) (citing *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011)). A summary admitted under Rule 1006 must be based on materials or documents that are themselves admissible under the Federal Rules of Evidence. *Peat, Inc.*, 378 F.3d at 1160.

Here, Defendant's summary of the Bureau of Transportation Statistics is not admissible under Rule 1006. First, although the underlying chart of statistics on which the summary is based would be admissible as a public record, Defendant has not shown that it is too voluminous to be admitted at trial in its original form. In addition, Defendant does not identify the available witness who prepared the summary chart and performed the arithmetic. Because the court cannot determine whether Defendant would be able to present a proper foundation for its admission at trial, it must be excluded from the Rule 56 record.

With that being said, the underlying evidence on which the summary is based on -- the Bureau of Transportation Statistics Table -- would be admissible at trial as a public record. Therefore, the court has limited its consideration of the table and reviewed it only to the extent it is admissible.

### 3.      The Declaration of Brad Leonard (Docs. # 89-1; 90-1)

Third, Plaintiff argues that the declaration of Brad Leonard, PJ Cheese's Chief Financial Officer, should be stricken from the record because (1) it was not timely filed; (2) Defendants failed to disclose Leonard as a person with knowledge in this matter; and (3) the declaration is not based on personal knowledge. (Doc. # 93 at 3-5).

At its core, Leonard's declaration focusses on the technical numbers used for each PJ Cheese store location, in an effort to show that Plaintiff and Joseph Fleming were employed -- at some point in time -- at different locations. (Docs. # 89-1; 90-1). However, even if the court were to consider Leonard's declaration for this purpose, there still is a genuine issue of material fact regarding *when* Joseph Fleming was last employed at the same store as Plaintiff. And, in any event, there is a question about when he may have visited the store at issue, even if not employed there at the times at issue. The declaration of Brad Leonard (*Id.*) does not purport to answer these questions.

Accordingly, the court has not relied on Leonard's declaration in considering Defendant's Motion for Summary Judgment. As a result, the motion to strike this exhibit is moot.

### 4.      The Email Chain (Docs. # 89-2; 90-2)

Finally, Plaintiff moves to strike an email chain submitted by Defendant that details some of the internal investigation performed by PJ Cheese and its counsel during this matter. (Docs. #

89-2; 90-2). Once again, the court has not relied on this email chain in considering Defendant's Motion for Summary Judgment. Therefore, Plaintiff's motion to strike this exhibit is moot.

## IV.    Conclusion

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (Doc. # 78) is due to be granted in part and denied in part. On his FLSA claim, to the extent Plaintiff seeks to prove his vehicle costs associated with his work through "reasonable approximation" and estimates, Plaintiff's motion is due to be granted. However, Plaintiff's motion for summary judgment on the issues of (1) whether Defendant must reimburse Plaintiff for a portion of the fixed vehicle costs associated with his work as a delivery driver to the extent they brought his wages below the minimum wage threshold, and (2) whether tips received by Plaintiff in excess of Defendant's tip credit can be credited to bring his pay above the minimum wage threshold is due to be denied.

Similarly, Defendant's Motion for Summary Judgment (Doc. # 80) is due to be granted in part and denied in part. Because questions of material fact remain, Defendant's requests for summary judgment on Plaintiff's hostile work environment claims and retaliation claims under Section 1981 and Title VII are due to be denied. Similarly, because a jury must decide whether Defendant's reimbursement rate of $0.27 per mile was reasonable, Defendant's motion for summary judgment on Plaintiff's FLSA claim is due to be denied. However, to the extent Defendant seeks (1) summary judgment on Plaintiff's disparate treatment claims under Title VII and Section 1981, (2) partial summary judgment on the question of whether it was required to reimburse certain fixed costs associated with Plaintiff's vehicle, and (3) partial summary judgment on its defense that it was not required to reimburse Plaintiff at the IRS rate, its motion is due to be granted on those grounds.

Finally, Plaintiff's Motions to Strike (Docs. # 86, 93) are due to be granted in part and denied in part. Because the court did not consider (1) the declaration of Emily Herrin (Doc. # 81-9); (2) the declaration of Brad Leonard (Docs. # 89-1; 90-1); or (3) the unauthenticated email chain (Docs. # 89-2; 90-2) in evaluating the Motions for Summary Judgment, Plaintiff's Motions to Strike these documents are due to be denied as moot. Plaintiff's request to strike Defendant's Exhibit 81-11, a summary of a table that details the average costs of owning and operating an automobile, is due to be granted because the court cannot determine whether Defendant would be able to present a proper foundation for its admission at trial. However, because the underlying evidence on which the summary is based -- the Bureau of Transportation Statistics Table -- would be admissible at trial as a public record, the court has given the content (for the relevant years) of that table appropriate consideration.

A separate order will be entered contemporaneously.

**DONE** and **ORDERED** this June 7, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE